IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.:

DIVISION:

VIRTUAL INFINITY, INC., a
Nevada Corporation,

        Plaintiff

Vs.

TEREX UTILITIES, INC., a Oregon
Corporation; RING POWER CORPORATION,
a Florida Corporation; ALTEC
INDUSTRIES, INC., a Alabama
Corporation; DAVIDSON GENERAL
PARTNER, INC., a Florida Corporation
d/b/a Mike Davidson Ford; and JEA, a
Corporation and quasi-governmental
agency of the City of Jacksonville;

        Defendants.

---

## COMPLAINT FOR DAMAGES, DECLARATORY, AND EQUITABLE RELIEF, AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, VIRTUAL INFINITY, INC. (hereinafter "VIRTUAL INFINITY"), by and through the undersigned attorney hereby brings this Complaint for Damages and equitable relief against the Defendants, TEREX UTILITIES, INC. (hereinafter "TEREX") a Oregon corporation, RING POWER CORPORATION (hereinafter "RINGPOWER"), a Florida Corporation, ALTEC INDUSTRIES, INC. (hereinafter "ALTEC"),

a Alabama corporation; and further brings this complaint for a preliminary injunction against DAVIDSON GENERAL PARTNER, INC., a Florida Corporation d/b/a Mike Davidson Ford (hereinafter "DAVIDSON"), and JEA, a Corporation and quasi-governmental agency of the City of Jacksonville, Florida, and would show this Court as follows:

### JURISDICTION

1.   This is a suit for damages, declaratory and equitable relief in a principal amount greater than $75,000.00.

2.   The District Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332, as the core causes of action in this matter arise under the Constitution, Laws and treaties of the United States, and the state law claims are enmeshed with the federal causes of action such that Jurisdiction over said state claims is appropriate under 28 U.S.C. 1367.

3.   The District Court has concurrent jurisdiction over this matter is based upon diversity of all parties pursuant to 28 U.S.C. 1332.

4.   The Plaintiff, VIRTUAL INFINITY, is a Nevada corporation doing business in interstate commerce and in Duval County, Jacksonville, Florida.

2

5. The Defendant, TEREX, is an Oregon Corporation, doing business in interstate commerce and in Duval County, Jacksonville, Florida.

6. The Defendant, RING POWER, is a Florida Corporation doing business in interstate commerce and in Duval County, Jacksonville, Florida.

7. The Defendant, ALTEC, is a Alabama Corporation doing business in interstate commerce and in Duval County, Jacksonville, Florida.

8. The Defendant, DAVIDSON, is a Florida Corporation doing business in interstate commerce and in Duval County, Jacksonville, Florida.

9. The Defendant, JEA is a Corporation and governmental agency of the City of Jacksonville, doing business in interstate commerce and in Duval County, Jacksonville, Florida.

10. Venue is proper in this Court.

11. All conditions precedent to the Plaintiff's right of recovery in this matter have been performed, have occurred, or have been waived.

12. The Plaintiff has obligated itself to pay a reasonable attorneys fee to bring this suit and Defendants are liable for the same.

3

**FACTS**

13. The Plaintiff, VIRTUAL, is a corporation whose primary business is the construction of specialized industrial equipment.

14. The Plaintiff, VIRTUAL, is an approved Class 8(a) Minority Federal contractor, and has bid and contracted with Agencies of the United States Federal Government, including but not limited to, the Department of Energy and the Department of Defense in localities across the United States.

15. On or about July 21, 2010, VIRTUAL received an Invitation to Bid (hereinafter the "Invitation") at a Public Bid Opening from JEA, solicitation number JSC-070-10, which bid was set to close on August 10, 2010.   The purpose of the bid was the planned procurement by JEA of chassis for specially designed utility work trucks commonly referred to in the industry as aerial devices. A copy of the Invitation is attached hereto as Exhibit "A".

16. The solicitation to bid (hereinafter the "solicitation") sets forth a detailed and comprehensive set of regulations to be complied with by all bidders. A copy of the solicitation is attached hereto as Exhibit "B"

17. The solicitation expressly states that the

4

chassis, which are the subject of the bid, must comply with the engineering specifications for the aerial devices to be provided by ALTEC and TEREX to all bidders, as ALTEC and TEREX already had contracts with JEA to build the aerial devices that are intended to be installed on the chassis that are the subject of the bid. See Exhibit "B" technical specifications, Pages 39-58.

18. It is nowhere disclosed in the solicitation that ALTEC and TEREX, by and through its closely associated sister corporation RING POWER, would be invited to bid on the chassis for which they were already under contract to build the aerial devices.

19. The mandatory pre-bid conference for the subject solicitation was held on July 21, 2010 at the JEA customer service office, located at 21 W. Church Street, Jacksonville, Florida 32202.

20. The attendees at the pre-bid conference were agents of VIRTUAL, RING POWER, ALTEC, DAVIDSON, and General Truck Equipment. A copy of the Pre-Bid Attendee list is attached hereto as Exhibit "C".

21. VIRTUAL did not discover until the pre-bid conference that ALTEC and RING POWER (TEREX), who already had contracts to build the aerial devices, would also be

bidding on the solicitation for the chassis.

22. At the outset of the pre-bid conference, the agent for ALTEC met with agents of JEA behind closed doors, and it is unknown to VIRTUAL what happened or what was discussed in that closed door meeting. However, it is known that ALTEC was eventually awarded the contract that is the subject of this litigation.

23. At the pre-bid conference, DAVIDSON dropped out of the bidding pool along with General Truck Equipment.

24. Thus, only VIRTUAL, ALTEC, and RING POWER (TEREX) were left as bidders on the solicitation that is the subject of this litigation.

25. Subsequent to the pre-bid conference, VIRTUAL began diligently attempting to acquire the engineering specifications necessary to present a responsive and responsible bid from ALTEC and TEREX. Copies of the email correspondence relating to VIRTUAL's request for the necessary engineering specifications to ALTEC and TEREX are attached hereto as Exhibit "D".

26. The Defendants, ALTEC and TEREX, are the only JEA approved commercial manufacturers of aerial devices for the chassis pursuant to the express terms of the solicitation, and they are the only entities who possess the engineering

6

specification necessary for VIRTUAL to prepare and submit its bid.

27.   In response to VIRTUAL's requests for the necessary engineering specification, ALTEC and TEREX repeatedly stated that the specification would be provided to VIRTUAL in time for VIRTUAL to prepare its bid. However, neither ALTEC nor TEREX ever provided the engineering specifications necessary for VIRTUAL to submit its bid.

28.   Eventually, agents of TEREX referred VIRTUAL to RING POWER, and said agents indicated that RING POWER would provide the engineering specifications to VIRTUAL on behalf of TEREX.

29.   The Defendant, RING POWER is the exclusive licensed dealer in the North Florida area for TEREX.

30.   VIRTUAL next began contacting RING POWER to request the necessary specifications, but their attempts to acquire the specifications from RING POWER were as fruitless as their attempts to acquire the same from ALTEC and TEREX. See Correspondence between VIRTUAL and RING POWER attached hereto as Exhibit "E".

31.   Continuing the pattern established by ALTEC and TEREX discussed in paragraph twenty-seven (27) above, RING

7

POWER never stated to VIRTUAL that it would not provide the specifications, it simply continuously promised that the specifications would be provided, but failed to live up to that promise in the end.

32.   Thus, Defendants, ALTEC, TEREX and RINGPOWER, all promised VIRTUAL that they would cooperate and provide engineering specifications for the aerial devices, as they are required to do by the solicitation and the JEA bidding code.   A copy of the relevant portion of the JEA bidding code is attached hereto as Exhibit "F".

33.   Neither RINGPOWER, nor ALTEC, nor TEREX, ever provided the specifications as required by the terms of the solicitation and the JEA solicitation code.

34.   It is clear that, had ALTEC, TEREX, or RINGPOWER simply stated that they would not provide the specifications to VIRTUAL, JEA would have been required to suspend the bidding process and disbar the noncompliant participants (i.e., ALTEC and TEREX) from bidding on the subject solicitation and future JEA solicitations for a period of three years.   See Exhibit "F", JEA purchasing code 8-101 & 8-305.

35.   Specification protests must be filed prior to the deadline for bid presentations pursuant to the JEA

purchasing code. *See* Exhibit "F", JEA purchasing code 8-101(1). Said specification protests must be made in writing and submitted within three days after the aggrieved firm knows or should know of the facts giving rise to the protest. *Id.*

36. By continually promising in bad faith to provide the specifications necessary for VIRTUAL to prepare its bid, the defendants ALTEC, TEREX, and RINGPOWER subverted the Plaintiffs ability to take action and file a specification protest under section 8-101(1), because VIRTUAL had no choice but to take the Defendants ALTEC, TEREX, and RINGPOWER at their word, and could not have known that the specifications were not coming until the bid deadline arrived.

37. As the bid deadline approached, VIRTUAL began contacting JEA to explain the situation, and put JEA on notice that there were promises of specifications coming from ALTEC, TEREX, and RING POWER, but no information was forthcoming; but, despite this notice, JEA took no substantive action to insure that the specification were provided to VIRTUAL as required by the solicitation and the JEA purchasing code. See correspondence between VIRTUAL and JEA attached hereto as Exhibit "G".

38. The bid deadline passed on August 10, 2010, and VIRTUAL was forced to submit a no-bid explaining the unfair and nefarious activities that ALTEC, TEREX, and RING POWER engaged in to block VIRTUAL from being able to submit a bid on the contract. A copy of VIRTUAL's No-Bid is attached hereto as Exhibit "H".

39. VIRTUAL timely filed a bid protest (hereinafter the "protest") with JEA, explaining once against the unfair and nefarious activities that ALTEC, TEREX, and RING POWER engaged in to block VIRTUAL from being able to submit a bid. See VIRTULA's formal bid protest attached hereto as Exhibit "I".

40. JEA subsequently denied the protest, and in doing so failed to address any of the issue raised in the protest by VIRTUAL. The denial effectively exhausted all administrative remedies available to VIRTUAL. A copy of the Denial is attached hereto as Exhibit "J".

41. There is strong evidence of collusion between JEA, ALTEC, RING POWER, and TEREX to fraudulently represent that the required engineering specifications would be provided to VIRTUAL, thereby blocking VIRTUAL from its right to submit a bid on the contract that is the subject of this litigation. Said evidence includes, but is not

10

limited to:

a.    The fact that ALTEC, RING POWER, and TEREX employed the exact same fraudulent tactic of promising the specifications to VIRTUAL rather that denying VIRTUAL the specifications outright, as this tactic prevented VIRTUAL from filing a specification protest as detailed above.

b.    The fact that there was a closed door meeting between the agents of JEA and ALTEC at the pre-bid conference, and that ALTEC eventually won the contract.

c.    The fact that VIRTUAL, as a registered 8(a) minority contractor, would enjoy a significant competitive advantage in the bidding process if their bid was not blocked by the fraudulent activities of ALTEC.

d.    The fact that JEA refused to substantively address the issues raised in the protest filed by VIRTUAL, and instead filed a denial of appeal that is utterly non-responsive to the issues raised in the protest.

e.    The fact that, upon information and belief, JEA has now decided to give the contract that is the subject of this lawsuit to DAVIDSON, despite the fact that DAVIDSON apparently never submitted either a bid or no-bid on the solicitation.

f.    The clear conflict of interest that arises

11

from the fact that ALTEC and TEREX already had the contracts to build the aerial devices, and thus their mutual interest in insuring that one or the other of those companies would also receive the contract to build the chassis.

g.   The fact that the ALTEC and RING POWER (TEREX) already had access to the engineering specifications necessary to submit a complete bid, thereby creating an unfair advantage in the bidding process for those two companies.

h.   The fact that, shortly before the bid deadline, the Defendants, RING POWER and ALTEC were provided addendums to the technical specifications to the contract by JEA.   Said addendums were never provided to VIRTUAL until after the bid deadline had passed.   This is a continuation of the patter of undisclosed ex-parte communications between JEA and ALTEC and RINGPOWER that are in violation of the solicitation and the JEA purchasing code.

i.   Most importantly, the fact that RING POWER, TEREX, and ALTECH proceeded, apparently in concert, and unquestioningly in the exact same manner, to maliciously represent to VIRTUAL that the subject engineering

12

specification would be provided, though no specifications were ever provided by any of said entities.

42. VIRTUAL believes, and the allegations herein support the contention, that there was a back room deal between ALTEC, TEREX and RING POWER, to lock VIRTUAL out of the bidding process, and strongly suspects that there was and is an undisclosed agreement between JEA, ALTEC and TEREX to the effect that, whichever company got the contract for the chassis, the other company would be used for procurement of the aerial devices, as both companies manufacture the aerial devices to JEA specifications.

43. VIRTUAL believes that more evidence of collusion between the Defendants ALTEC, RING POWER, JEA, and TEREX will come to light in the discovery process of this lawsuit.

44. Ultimately, JEA awarded the contract to ALTEC, and VIRTUAL's protest regarding the unfair and anti-competitive activities of ALTEC, RING POWER, and TEREX were ignored, dismissed, and outright rejected by JEA. *See* contract award notice attached hereto as Exhibit "K" and JEA notice of denial of administrative appeal attached hereto as Exhibit "J".

45. Thus, VIRTUAL's administrative remedies were

13

exhausted, and it had no choice but to file this suit, which seeks:

a. A declaratory judgment that the Defendants RING POWER, TEREX, and ALTEC acted in bad faith, and that, pursuant to the JEA procurement code, they must be disbarred from bidding on the contract that is the subject of this litigation and any future JEA solicitation for the next three (3) years;

b. Monetary damages against the Defendants ALTEC, TEREX and RING POWER for violations of federal restraint of trade regulations under 15 U.S.C. 1 et seq, the Florida Unfair and Deceptive Trade Practices Act, tortious interference with advantageous business relationships, federal civil conspiracy, and constructive fraud;

c. Monetary damages against JEA for depriving VIRTUAL of its due process rights to bid on the subject contract in violation of 42 U.S.C. 1983; and

d. A preliminary injunction against the Defendants JEA, TEREX, RING POWER, ALTEC, and DAVIDSON, preserving the status quo ante and preventing JEA from implementing the contract, and further mandating a halt and cessation of all activities on the part of all named

14

Defendants of any corporate activities which could lead to the spoliation or destruction of evidence, which will be prayed for by motion and memorandum of law filed contemporaneously with this pleading.

**COUNT I: DAMAGES AGAINST JEA, ATLEC, RING POWER, AND TEREX UNDER THE SHERMAN ANTI-TRUST ACT, 15 U.S.C. § 1, et seq**

46. Plaintiff hereby re-alleges and incorporates into this court all the allegations of paragraphs one (1) through forty-five (45) of this pleading.

47. The Defendants JEA, TEREX, ALTEC, and RING POWER are separate and distinct corporate entities, having separate offices, corporate charters, business models, and daily business activities.

48. The facts set forth above, if taken as true, suggest a pattern of compact, combination and conspiracy in restraint of trade on behalf of the Defendants TEREX, ALTEC, RING POWER, and JEA to block, frustrate, and disenfranchise VIRTUAL of its right to participate in an open and fair bidding process for the contract that is the subject of this litigation.

49. The Plaintiff reasonably estimates the net value of the contract at issue to be between $35,000,000.00 and $50,000,000.00 dollars.

15

50.  All  of  the  players  in  the  conspiracy  are
operating  in  interstate  commerce  and  doing  business  in
various  states,  and  the  conduct  complained  of,  if  allowed
to  stand,  will  have  a  significant  impact  on  interstate
commerce.

51.  The Defendant JEA is a producer of energy that is
sold  both  in  the  local  and  in  interstate  markets  in  its
normal  course  of  business,  and  improprieties  in  JEA's
bidding  and  procurement  procedures  can  have  a  significant
impact  on  the  market  for  energy  throughout  the  United
States.

52.  The  Plaintiff  has  sustained  significant  and
ongoing  damages  as  a  direct  and  proximate  result  of  the
conspiratorial  actions  of  the  Defendants  TEREX,  ALTEC,  RING
POWER,  and  JEA.

WHEREFORE, plaintiff prays that:

a.  A  declaratory  judgment  in  its  favor  be  entered  in
its  favor  against  the  Defendants  JEA,  TEREX,  RING  POWER,
and ALTEC:

(1)  Finding  their  activities  discussed  herein  to
be  anti-competitive  within  the  meaning  of  15  U.S.C.  §  1  et
seq;  and

(2)  Finding  that  the  activities  of  the  defendants

16

discussed herein are in direct violation of the JEA procurement code, and ordering the disbarment of the Defendants TEREX, RING POWER, and ALTEC from bidding on the subject contract or any future bid solicitations promulgated by JEA for three years pursuant to section 8-102 of said code;

b. A judgment at law for damages in a principal amount greater than $75,000.00, plus costs of suit, interest, attorney's fees, punitive damages, treble damages pursuant to 15 U.S.C. 15(a), and any other relief the court deems necessary.

**COUNT II:   DAMAGES AGAINST JEA UNDER 42 U.S.C. § 1983**

53. Plaintiff hereby re-alleges and incorporates into this court all the allegations of paragraphs one (1) through forty-five (45) of this pleading.

54. This is an action for damages against the Defendant JEA pursuant to 42 U.S.C. § 1983 for violation of its due process rights under the U.S. Constitution, Amendment 14, Article 1.

55. The Defendant JEA is a municipal corporation and quasi-governmental agency owned and controlled by the City of Jacksonville, Florida.

56. The mayor of Jacksonville, Florida and

17

Jacksonville city council members sit upon and control the board of directors to JEA.

57. JEA is a state actor for purposes of 42 U.S.C. § 1983.

58. JEA deprived VIRTUAL of property without due process of law, by participating in the conspiracy discussed herein, or by willfully and/ or negligently failing to recognize and rectify the serious improprieties committed by the Defendant ALTEC, TEREX, and RINGPOWER, and by failing to disbar ALTEC and RING POWER from participation in the subject bid and any future bid solicitations promulgated by JEA, both of which acts contrary to the JEA Procurement Code.

59. As the only other responsive and responsible bidder, albeit a bidder who was blocked out of the process in violation of the JEA procurement code, VIRTUAL has a proprietary right in the contract award that is the subject of this litigation; because, if JEA had disbarred TEREX and ALTEC for their nefarious acts described herein, as required by the JEA procurement code, VIRTUAL would have won the contract by default as the only other responsible bidder who attended the mandatory pre-bid meeting and attempted to submit a fair and reasonable bid.

60. The conspiracy alleged herein, a conspiracy in which JEA either participated, or willfully failed to rectify and prevent, usurped any semblance of a reasonable notice and opportunity to be heard on the merits of VIRTUAL's right to submit a fair and open bid on the contract that is the subject of this litigation, and JEA's failure to follow its own disbarment procedure has resulted in a deprivation of VIRTUAL's right to the contract this is the subject of this dispute.

61. VIRTUAL reasonably believes the net value of the contract to be between $35,000,000.00 and $50,000,000.00, with a profit margin between 9% and 13%.

WHEREFORE, the Plaintiff prays that:

a. A declaratory judgment be entered in its favor against JEA, finding that JEA failed to follow the mandates of its own procurement code, by participating in, or willfully and/or negligently failing to prevent the conspiracy describe herein, and by failing to disbar and prevent the Defendants TEREX and RING POWER from bidding on the contract that is the subject of this litigation; and

b. That a judgment at law be entered in its favor against JEA in a principal sum greater than $75,000.00, plus damages for lost profits, consequential damages,

punitive damages, interest, court cost, attorney's fees, and any other relief the court deems necessary.

**COUNT III: DAMAGES AGAINST TEREX, ALTEC, RING POWER, AND JEA FOR CONSIPRACY IN RESTRAINT OF TRADE PURSUANT TO FEDERAL COMMON LAW**

62. Plaintiff hereby re-alleges and incorporates into this court all the allegations of paragraphs one (1) through forty-five (45) of this pleading.

63. This is an action for damages for the anti-competitive in restraint of trade described herein pursuant to long established Federal common-law. See Western Union Tel. Co. v. Call Pub. Co., 181 U.S. 92 (1901)("At common-law, the person injured by an illegal restraint of trade had a right of action"); Continental Airlines, Inc. v. United States, 277 F.3d 499 (4th Cir. 2002).

64. Based on the course of action described above, the Defendants TEREX, ALTECH, RING POWER, and JEA have conspired in restraint of trade by blocking VIRTUAL from the ability to submit a bid on the solicitation that is the subject of this litigation.

65. VIRTUAL has incurred significant and on-going damages as a direct and proximate of the concerted acts of TEREX, ALTECH, RING POWER, and JEA described hereinabove.

WHEREFORE, the Plaintiff prays that a judgment be

entered in its favor against the Defendants TEREX, ALTECH, RING POWER, and JEA in a principal sum greater than $75,000.00, plus punitive damages, attorney's fees, interest, costs of suit, and any other relief the court deems necessary.

**COUNT IV: UNFAIR AND DECEPTIVE BUSINESS PRACTICES AGAINST THE DEFENDANTS RING POWER, ALTEC AND TEREX**

66.   Plaintiff hereby re-alleges and incorporates into this court all the allegations of paragraphs one (1) through forty-five (45) of this pleading.

67.   The actions of the Defendants TEREX, ALTECH, and RING POWER described herein are unfair and deceptive within the meaning Fla. Stat. § 501.201-13.

68.   The Plaintiff has suffered significant and on-going damages as a direct and proximate result of said unfair and deceptive activities committed by TEREX, ALTECH and RING POWER.

WHEREFORE, Plaintiff prays that the court enter a judgment in its favor against the Defendants TEREX, ALTEC and RINGPOWER in a principal sum greater than $75,000.00, plus interest, costs of suit, attorney's fees pursuant to the statute, and any other relief the court deems necessary.

**COUNT V:   TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS
RELATIONSHIP AGAINST TEREX, ALTEC, AND RING POWER**

69.   Plaintiff hereby re-alleges and incorporates into
this court all the allegations of paragraphs one (1)
through forty-five (45) of this pleading.

70.   VIRTUAL enjoys an advantage business relationship
with JEA; to wit, the Plaintiff was invited to bid JEA
procurement solicitation that is the subject of this
lawsuit.

71.   The Defendants TEREX, ALTEC, and RING POWER
tortiously interfered with the business relationship
described in paragraph (27) above, by refusing to provide
the necessary engineering specification to VIRTUAL, thereby
effectively blocking VIRTUAL from the ability to submit a
bid on the procurement solicitation that is the subject of
this litigation.

72.   The Plaintiff has suffered significant and on-
going damages as a direct and proximate result of said
tortious interference by TEREX, ALTECH and RING POWER.

WHEREFORE, Plaintiff prays that the court enter a
judgment in its favor against the Defendants TEREX, ALTEC
and RINGPOWER in a principal sum greater than $75,000.00,

plus interest, punitive damages, costs of suit, attorney's fees, and any other relief the court deems necessary.

### COUNT VI: CONSTRUCTIVE FRAUD AGAINST TEREX, ALTEC, AND RING POWER

73. Plaintiff hereby re-alleges and incorporates into this court all the allegations of paragraphs one (1) through forty-five (45) of this pleading.

74. The activities of Defendants ALTEC, TEREX, and RING POWER described with particularity herein, when taken as a whole, can only be construed as fraudulent.

75. The Plaintiff has suffered significant and on-going damages as a direct and proximate result of said fraudulent activities by TEREX, ALTECH and RING POWER.

WHEREFORE, Plaintiff prays that the court enter a judgment in its favor against the Defendants TEREX, ALTEC and RINGPOWER in a principal sum greater than $75,000.00, plus interest, punitive damages, costs of suit, attorney's fees, and any other relief the court deems necessary.

(the Remainder of this page intentionally left blank)

23

**A JURRY TRIAL IS HEREBY DEMANDED BY THE PLAINTIFF ON
ALL ISSUES OF FACT RAISED IN THIS PLEADING.**

DATED this __ day of November, 2010.

                    GRIGALTCHIK & ROWE, P.A.

                    ADAM ROWE, ESQ.
                    Fla. Bar No. 19324
                    DAVID GRIGALTCHIK, ESQ.
                    Fla. Bar No. 59739
                    12627 San Jose Blvd. Suite 206
                    Jacksonville, FL  32202
                    (904)738-8398
                    (904)738-8413 (fax)